UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-60265-CR-MOORE/SNOW

UNITED STATES OF AMERICA,

       Plaintiff,

vs.

VICTOR VARGAS,

       Defendant.

_____

REPORT AND RECOMMENDATION

       THIS CAUSE is before the Court on the Defendant's Motion to Dismiss Due to Post-Indictment Delay in Violation of Defendant's Sixth Amendment Right to a Speedy Trial (ECF No. 12), which was referred to United States Magistrate Judge, Lurana S. Snow, for a Report and Recommendation. The Motion is fully briefed and a hearing was conducted on October 29, 2021. The Motion is ripe for consideration.

       In the Motion, the Defendant acknowledges that he was arrested in Florida on June 18, 2018, following the sale of two kilograms of heroin to an undercover federal agent (UC). Following his arrest, the Defendant waived his Miranda rights and agreed to speak with law enforcement officers. He also consented to a search of his cellular telephone. The Defendant was released without the filing of formal charges. (ECF No. 12 at 2-3.)

       On September 25, 2018, the instant Indictment was returned, charging the Defendant with conspiracy to possess with intent to distribute one or more kilograms of heroin, in violation of 21 U.S.C. § 846 and possession of one or more kilograms of heroin with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). (ECF No. 1) An Arrest Warrant was issued on the same date, but the Defendant was

not arrested until August 18, 2021, some 35 months after the indictment was returned. The Defendant contends that the delay between the Indictment and his arrest violated his constitutional right to a speedy trial.

## I. EVIDENCE PRESENTED

The sole witness for the Government at the hearing on the instant Motion was DEA Special Agent Brett Palat, the case agent at the time of the events giving rise to the Indictment against the Defendant.  Agent Palat stated that following a series of recorded telephone calls between the Defendant and an undercover officer (UC), as well as a meeting between the Defendant and the UC which was audio and video recorded, the Defendant was arrested for delivering two kilograms of heroin to the UC. The arrest took place on June 18, 2018.

Agent Patal related that after being advised of his Miranda rights, the Defendant admitted his involvement in the heroin deal.  The Defendant agreed to cooperate with DEA in South Florida and New York (where the Defendant resided and where he picked up the heroin for transportation to Florida).  On the day of his arrest, the Defendant placed monitored phone calls to two co-conspirators, permitted agents to search his phone and identified telephone numbers which related the case.  The Defendant was told that his cooperation with DEA would be made known to the prosecutor and, based on the Defendant's promise of continued cooperation, he was not formally charged and was permitted to return to New York on June 19, 2018.  The Defendant was not told that he would not be charged with a crime for his role in the heroin sale.

The Defendant provided no further cooperation with agents in Florida or New York, and the Indictment against him was returned on September 25, 2018. Shortly thereafter, Agent Palat forwarded the Warrant for the Defendant's arrest to

the New York Strike Force.  Agent Palat communicated with two Strike Force members regarding the warrant, after which he contacted another agent in New York requesting assistance in arresting the Defendant.  Agent Palat subsequently sought assistance from DEA agents in Westchester, New York, where the Defendant was believed to reside.  The email correspondence with various agents began in October 2018 and continued through June 2019.  (Government's Ex. 1, ECF No. 16-2.)

The Westchester agents informed Agent Palat that they had attempted to locate the Defendant on one occasion and would be trying again.  Agent Palat later contacted the New York Fugitive Task Force and the U.S. Marshal to provide assistance.  Also, on January 18, 2019, Agent Palat submitted a Fugitive Declaration Form pertaining to the Defendant (Government Ex. 2, ECF No. 14-4), which resulted in the entry of the Defendant's arrest warrant into NCIC (Government's Ex. 3, ECF No. 14-6).  On July 8, 2019, the agent initiated an EPIC lookout for the Defendant. (Government's Ex. 4, ECF No. 14-8.)

On cross-examination by counsel for the Defendant, Agent Palat acknowledged that the Defendant was arrested in 2021 at the address in Yonkers that had been listed on the Defendant's driver's license in June 2018.  Agent Palat had no information that the Defendant had changed his address at any time between the dates of his Florida arrest and his New York arrest or that the Defendant had ever used an alias.  The agent conceded that he does not know how many times law enforcement agents visited the Defendant's residence between September 25, 2018, the date on which the Indictment was returned and August 18, 2021, the date of the Defendant's arrest on the Indictment.

Agent Palat testified that the Defendant had been stopped by Immigration officers in July 2021, at which time the Defendant was advised that there

were criminal charges pending against him. Agent Palat did not know if the Defendant was aware of the charges before that time. The Defendant was released by Immigration and was arrested by the U.S. Marshal the following month.

Regarding the Defendant's cooperation, Agent Palat admitted that his partner had spoken to the Defendant in Spanish at the time of the Defendant's 2018 arrest and consequently Agent Palat does not know exactly what was said. Agent Palat determined that the Defendant was no longer cooperating when New York officers advised him that the Defendant no longer was taking their calls. Also, the UC told Agent Palat that on June 19, 2018, the day after the Defendant's arrest and release in Florida, the Mexican source of supply for the heroin told the UC that the Defendant had been arrested. Since no one other than DEA agents, who were hoping for cooperation from the Defendant, and the Defendant himself knew of the arrest, Agent Palat inferred that the Defendant had informed the source, thereby eliminating any possibility of the Defendant setting up another drug deal on behalf of DEA. According to Agent Palat, no law enforcement agent ever told the Defendant that his cooperation no longer would be useful.

On redirect examination by the Government, Agent Palat testified that knocking on a suspect's door is not the only method of effecting an arrest. He stated it is sometimes safer and more prudent to arrest an individual through surveillance outside his residence or while the person is traveling. The agent pointed out that an unsuccessful attempt to arrest a suspect at his home can increase the risk of flight. Agent Palat related that the UC called the Defendant, but the Defendant did not answer the phone. The UC asked the Defendant to call him, and told him that the case was not going away.

Finally, Agent Palat testified that in March 2020, a memorandum was issued by a deputy director of DEA advising agents to work remotely when possible and to take steps to maintain social distancing during the COVID-19 pandemic. The result was that work slowed down, access to facilities decreased and law enforcement agents had to devise different ways to coordinate with one another.

Sally Perez, a long-time investigator for the Federal Public Defender's Office testified for the Defendant. She stated that she uses a database called Accurint to obtain background reports on individuals she wishes to locate. Ms. Perez obtained such a background check on the Defendant which indicated that he resided at the same address from May 2017 through September 2021. On cross-examination, she conceded that the report cannot reflect whether an individual is physically present at his listed residence at any given time.

## II. <u>DISCUSSION</u>

The Defendant contends that the delay between the return of the instant Indictment and his arrest violated his Sixth Amendment right to a speedy trial. The Government responds that the Defendant's speedy trial right was not violated because the delay resulted from the actions of the Defendant as well as the effects of the COVID-19 pandemic. Additionally, the Government asserts that the Defendant did not invoke his right to a speedy trial until the instant Motion was filed on October 20, 2021 and, in light of the Defendant's confession and the overwhelming evidence against him, he has suffered no prejudice as the result of the delay.

In determining whether there has been a violation of a defendant's speedy trial rights, this Court must employ a balancing test which weighs the conduct of the prosecution and the defendant. <u>Barker v. Wingo</u>, 407 U.S. 514, 530 (1972). In so doing, the Court must consider four factors: the length of delay, the reason for the

delay, the defendant's assertion of his right, and prejudice to the defendant.  Id. Having identified these four factors, the Supreme Court went on to state:

> We regard none of the four factors identified above as either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant. In sum, these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process.

Id. at 532.

The analysis must begin with the first factor, the length of delay.  If the delay is of sufficiently duration to be "presumptively prejudicial," the court will go on to consider the other three factors.  United States v. Clark, 83 F.3d 1350, 1352 (11th Cir. 1996).  In United States v. Schlei, 122 F.3d 944, 987 (11th Cir. 1997), the court held that one year of post-indictment delay is presumptively prejudicial.  If the first three factors do not weigh "heavily" against the Government, the Defendant must show that he was actually prejudiced by the delay.  United States v. Ingram, 446 F.3d 1332, 1338 (11th Cir. 2006).

In the instant case, the Government concedes that the 35-month post-indictment delay is presumptively prejudicial, while the Defendant concedes that he has suffered no actual prejudice as the result of the delay.  Therefore, this Court must determine whether the second and third factors weigh against the Government and, if so, whether they do so heavily.  As to the third factor, the Defendant did not assert his right to a speedy trial until the instant Motion was filed on October 20, 2021, some two months after his arrest.  The undersigned finds that although this delay is not sufficient to weigh against the Defendant, neither does it weigh against the Government.

Thus, the outcome of this Motion turns on the second factor: the reason for the delay. As the Defendant points out, he was arrested at the same address as was listed on his driver's license in 2018; there is no evidence that he had ever resided at a different address; there is no evidence that he knew of the Indictment pending against him until he was stopped by Immigration authorities in July 2021 or that he was attempting to evade arrest; there is very little evidence of attempts made by Government agents in New York to locate and apprehend him, and there is no evidence that the COVID-19 pandemic impeded those efforts.

The undersigned agrees with the Defendant that each of these facts weighs against the Government, so the issue to be resolved is whether their cumulative weight is heavy enough to excuse the Defendant from demonstrating prejudice. The first fact weighing in favor of the Government is that the Defendant was released from custody and permitted to return to New York based on his agreement to cooperate with DEA in South Florida and New York. If not for the Defendant's initial cooperation, which did not continue as anticipated, he would have been arrested and charged immediately and Agent Palat would not have had to rely on agents in another state to arrest the Defendant on the charges. Also in the Government's favor is the fact that Agent Palat made diligent efforts to ensure that the Defendant was arrested promptly, although other Government agents failed to follow through in an effective manner. Finally, while the COVID-19 pandemic did not prevent the arrest of the Defendant, it was another complicating factor which was outside the Government's control.

Based on these mitigating facts, the undersigned finds that the length of delay does not weigh heavily against the Government. In so finding, the undersigned notes that in United States v. Ingram, 446 F.3d 1332 (11th Cir. 2006), on which the Defendant relies, the Government's actions were far more difficult to excuse. In

Ingram, the court noted that the investigating agent knew that he was the only law enforcement officer responsible for arresting the Defendant and he had more than enough information to do so.  Id. at 1339.  Those circumstances were found to be distinguishable from those in United States v. Clark, 83 F.3d 1350, 1352 (11th Cir. 1996), where police officers failed to apprehend the defendant because they believed that the U.S. Marshal would be executing the arrest warrant. Emphasizing that the Government's delay was not deliberate, but merely negligent, the Clark court required the defendant to demonstrate that he was prejudiced by the delay.  In Ingram, by contrast, there was "no reasonable explanation for Government's neglect in executing the warrant" and no showing of prejudice was necessary.  Ingram, at 1339.

The undersigned believes that the instant case is more closely aligned with Clark than Ingram.  In Clark, as here, the defendant continuously resided at the address listed on the arrest warrant.  Moreover, there was no evidence that the defendant was attempting to elude arrest or that he even knew of the indictment against him.  The police made only one feeble attempt to locate the defendant before the date of his arrest, and the Government conceded that the failure to apprehend the defendant was the result of negligence, but asked that the negligence be excused. Clark, 83 F.3d at 1352.  Based primarily on the absence of bad faith, the court concluded that a showing of actual prejudice from the delay was required.  Id. at 1354.

As noted earlier, the Defendant here concedes that he cannot show actual prejudice, and there is nothing to suggest that the Government's delay in arresting the Defendant was a purposeful effort to obtain some tactical advantage.  Under the particular circumstances of this case, the undersigned concludes that the Indictment should not be dismissed for violation of the Defendant's right to a speedy trial.

### III. CONCLUSION

This Court having considered carefully the papers, arguments of counsel, and the applicable case law, it is hereby

RECOMMENDED that the Defendant's Motion to Dismiss Due to Post-Indictment Delay in Violation of Defendant's Sixth Amendment Right to a Speedy Trial (ECF No. 12) be DENIED.

In light of the last-minute filing of the instant Motion and the imminent trial date, the parties will have until November 3, 2021 to file written objections, if any, with the Honorable K. Michael Moore, United States District Judge.  Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained therein, except upon grounds of plain error if necessary in the interest of justice.  See 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140, 149 (1985); Henley v. Johnson, 885 F.2d 790, 794 (1989); 11th Cir. R. 3-1..

DONE AND SUBMITTED at Fort Lauderdale, Florida, this 29th day of October, 2021.

_____
LURANA S. SNOW
UNITED STATES MAGISTRATE JUDGE

Copies to:

All counsel of record