UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 0:18-cr-60265-KMM-1

UNITED STATES OF AMERICA,

v.

VICTOR VARGAS,

      Defendant.

                                             /

## ORDER ON REPORT AND RECOMMENDATION

THIS CAUSE came before the Court upon Defendant Victor Vargas's (1) ("Defendant")
Motion to Dismiss Indictment Due to Post-Indictment Delay in Violation of Defendant's Sixth
Amendment Right to a Speedy Trial. ("Mot.") (ECF No. 12). The Government filed a response,
("Resp.") (ECF No. 14), and a supplement to its response, ("Supp. Resp.") (ECF No. 16).
Defendant filed a reply. ("Reply") (ECF No. 19). The Court referred the matter to the Honorable
Lurana S. Snow, United States Magistrate Judge. (ECF No. 11). Magistrate Judge Snow issued a
Report and Recommendation ("R&R") recommending that Defendant's Motion be DENIED.
(ECF No. 23). Defendant filed Objections to the R&R. ("Objs.") (ECF No. 24). The Government
did not file any objections or response, and the time to do so has passed. The matter is now ripe
for review. As set forth below, the Court ADOPTS the R&R.

The Court may accept, reject, or modify, in whole or in part, the findings or
recommendations made by the magistrate judge. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).
The Court "must determine *de novo* any part of the magistrate judge's disposition that has been
properly objected to." Fed. R. Civ. P. 72(b)(3). A *de novo* review is therefore required if a party
files "a proper, specific objection" to a factual finding contained in the report. *Macort v. Prem,*

*Inc.*, 208 F. App'x 781, 784 (11th Cir. 2006). "It is critical that the objection be sufficiently specific and not a general objection to the report" to warrant *de novo* review. *Id.*

In Defendant's Motion, he argues that the Indictment (ECF No. 1) should be dismissed due to a violation of his Sixth Amendment right to a speedy trial. *See generally* Mot. In the R&R, Magistrate Judge Snow recommends that Defendant's Motion be DENIED. The Court agrees.

In the R&R, Magistrate Judge Snow sets forth the following relevant facts, based in large part upon testimony offered by DEA Special Agent Brett Palat at a hearing held on the issues raised in Defendant's instant Motion. Defendant was arrested on June 18, 2018 following his delivery of two kilograms of heroin to an undercover officer. R&R at 2. Defendant admitted to his involvement in the heroin deal after waiving his *Miranda* rights. *Id.* On the day of his arrest, Defendant offered his cooperation by placing monitored calls to co-conspirators, permitting agents to search his phone, and identifying telephone numbers related to the case. *Id.* Defendant was told that his cooperation would be made known to prosecutors and he was allowed to return to New York on June 19, 2018. *Id.* Defendant was not told whether he would be charged with a crime for his role in the sale of narcotics. *Id.* Defendant provided no further cooperation with agents in Florida or New York after this point. "On September 25, 2018, the instant Indictment was returned, charging the Defendant with conspiracy to possess with intent to distribute one or more kilograms of heroin, in violation of 21 U.S.C. § 846 and possession of one or more kilograms of heroin with intent to distribute, in violation of 21 U.S.C. § 841(a)(1)." *Id*. at 1. "An Arrest Warrant was issued on the same date, but [Defendant] was not arrested until August 18, 2021, some 35 months after the indictment was returned." *Id*. at 1–2.

Magistrate Judge Snow detailed Agent Palat's efforts to have Defendant arrested following the return of the Indictment:

Agent Palat forwarded the Warrant for the Defendant's arrest to the New York Strike Force. Agent Palat communicated with two Strike Force members regarding the warrant, after which he contacted another agent in New York requesting assistance in arresting the Defendant. Agent Palat subsequently sought assistance from DEA agents in Westchester, New York, where the Defendant was believed to reside. The email correspondence with various agents began in October 2018 and continued through June 2019. (Government's Ex. 1, ECF No. 16-2.)

The Westchester agents informed Agent Palat that they had attempted to locate the Defendant on one occasion and would be trying again. Agent Palat later contacted the New York Fugitive Task Force and the U.S. Marshal to provide assistance. Also, on January 18, 2019, Agent Palat submitted a Fugitive Declaration Form pertaining to the Defendant (Government Ex. 2, ECF No. 14-4), which resulted in the entry of the Defendant's arrest warrant into NCIC (Government's Ex. 3, ECF No. 14-6). On July 8, 2019, the agent initiated an EPIC lookout for the Defendant. (Government's Ex. 4, ECF No. 14-8.)

On cross-examination by counsel for the Defendant, Agent Palat acknowledged that the Defendant was arrested in 2021 at the address in Yonkers that had been listed on the Defendant's driver's license in June 2018. Agent Palat had no information that the Defendant had changed his address at any time between the dates of his Florida arrest and his New York arrest or that the Defendant had ever used an alias. The agent conceded that he does not know how many times law enforcement agents visited the Defendant's residence between September 25, 2018, the date on which the Indictment was returned and August 18, 2021, the date of the Defendant's arrest on the Indictment.

Agent Palat testified that the Defendant had been stopped by Immigration officers in July 2021, at which time the Defendant was advised that there were criminal charges pending against him. Agent Palat did not know if the Defendant was aware of the charges before that time. The Defendant was released by Immigration and was arrested by the U.S. Marshal the following month.
. . .

Finally, Agent Palat testified that in March 2020, a memorandum was issued by a deputy director of DEA advising agents to work remotely when possible and to take steps to maintain social distancing during the COVID-19 pandemic. The result was that work slowed down, access to facilities decreased and law enforcement agents had to devise different ways to coordinate with one another.

Sally Perez, a long-time investigator for the Federal Public Defender's Office testified for the Defendant. She stated that she uses a database called Accurint to obtain background reports on individuals she wishes to locate. Ms. Perez obtained such a background check on the Defendant which indicated that he resided at the same address from May 2017 through September 2021. On cross-examination, she

conceded that the report cannot reflect whether an individual is physically present at his listed residence at any given time.

R&R at 2–5.

Magistrate Judge Snow considered Defendant's Motion under the four factors set forth in *Barker v. Wingo*, 407 U.S. 514, 530 (1972) ("[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant."). Magistrate Judge Snow also noted that in *United States v. Schlei*, 122 F.3d 944, 987 (11th Cir. 1997), the court held that one year of post-indictment delay is presumptively prejudicial. Thus, if the first three factors do not weigh "heavily" against the Government, the Defendant must show that he was actually prejudiced by the delay. *United States v. Ingram*, 446 F.3d 1332, 1338 (11th Cir. 2006).

First, Magistrate Judge Snow noted that "the Government concedes that the 35-month postindictment delay is presumptively prejudicial, while the Defendant concedes that he has suffered no actual prejudice as the result of the delay." R&R at 6. Thus, Magistrate Judge Snow found that this case will turn on whether the second and third factors weigh heavily against the Government. *Id.*

Magistrate Judge Snow then turned to the third factor and found: "[T]he Defendant did not assert his right to a speedy trial until the instant Motion was filed on October 20, 2021, some two months after his arrest. The undersigned finds that although this delay is not sufficient to weigh against the Defendant, neither does it weigh against the Government." *Id.* at 6.

Then, with respect to the second factor, Magistrate Judge Snow began by noting the following:

> As the Defendant points out, he was arrested at the same address as was listed on his driver's license in 2018; there is no evidence that he had ever resided at a different address; there is no evidence that he knew of the Indictment pending against him until he was stopped by Immigration authorities in July 2021 or that he was attempting to evade arrest; there is very little evidence of attempts made by

Government agents in New York to locate and apprehend him, and there is no evidence that the COVID-19 pandemic impeded those efforts.

*Id*. at 7.  Magistrate Judge Snow agreed with Defendant that each of these facts weighs against the Government.  *Id*.  Thus, Magistrate Judge Snow turned to whether "whether their cumulative weight is heavy enough to excuse the Defendant from demonstrating prejudice."  *Id*.  In so doing, Magistrate Judge Snow noted three facts that weigh in favor of the Government on this issue: (1) Defendant was permitted to return to New York based on his agreement to cooperate, which did not continue as anticipated, (2) Agent Palat made "diligent efforts" to ensure that Defendant was arrested promptly, but other Government agents failed to follow through in an effective manner, and (3) while the COVID-19 pandemic did not prevent Defendant's arrest, it was a complicating factor.  *Id*. at 7.  Based on these mitigating facts, Magistrate Judge Snow concluded that the length of the delay does not weigh heavily against the Government.  *Id*.

Magistrate Judge Snow's finding required her to review the application of two Eleventh Circuit cases to the facts of this case: *United States v. Ingram*, 446 F.3d 1332 (11th Cir. 2006) and *United States v. Clark*, 83 F.3d 1350, 1352 (11th Cir.1996).  *Id*. at 7–8.  Magistrate judge Snow noted the following difference between these two cases:

> Emphasizing that the Government's delay was not deliberate, but merely negligent, the *Clark* court required the defendant to demonstrate that he was prejudiced by the delay.   In *Ingram*, by contrast, there was "no reasonable explanation for Government's neglect in executing the warrant" and no showing of prejudice was necessary.  *Ingram*, 446 F.3d at 1339.

*Id*. at 8 (internal citations reformatted).  Magistrate Judge Snow found that this case was distinguishable from *Ingram* because, in that case, "the court noted that the investigating agent knew that he was the only law enforcement officer responsible for arresting the Defendant and he had more than enough information to do so."  R&R at 8 (citing *Ingram*, 446 F.3d at 1337).  Rather, Magistrate Judge Snow found this case to be more analogous to *Clark*, "where police officers

failed to apprehend the defendant because they believed that the U.S. Marshal would be executing the arrest warrant." *Id.* (citing *Clark*, 83 F.3d at 1352).  Magistrate Judge Snow further stated:

> The undersigned believes that the instant case is more closely aligned with *Clark* than *Ingram*.  In *Clark*, as here, the defendant continuously resided at the address listed on the arrest warrant.  Moreover, there was no evidence that the defendant was attempting to elude arrest or that he even knew of the indictment against him. The police made only one feeble attempt to locate the defendant before the date of his arrest, and the Government conceded that the failure to apprehend the defendant was the result of negligence, but asked that the negligence be excused.  *Clark*, 83 F.3d at 1352.  Based primarily on the absence of bad faith, the court concluded that a showing of actual prejudice from the delay was required.  *Id.* at 1354.

> As noted earlier, the Defendant here concedes that he cannot show actual prejudice, and there is nothing to suggest that the Government's delay in arresting the Defendant was a purposeful effort to obtain some tactical advantage.  Under the particular circumstances of this case, the undersigned concludes that the Indictment should not be dismissed for violation of the Defendant's right to a speedy trial.

*Id.* at 8.

Defendant's Objections begin by agreeing that Magistrate Judge Snow correctly identified the four-factor balancing test articulated in *Barker v. Wingo*, 407 U.S. 514, 530 (1972).  Objs. at 1.  Defendant also agreed that Magistrate Judge Snow correctly found that prejudice is presumed due to the length of the delay between Defendant's indictment and arrest.  *Id.* at 2.  However, Defendant contends that Magistrate Judge Snow incorrectly applied the second and third *Barker* factors for the following reasons.

First, Defendant argues that Magistrate Judge Snow erred with respect to her findings under the second *Barker* factor, which probes the "reason for the delay," because the Government's efforts to bring Defendant to trial were "desultory, perfunctory, superficial and half-hearted."  *Id.* at 3.  Defendant contends that the Government "has a 'constitutional duty to make a diligent, good-faith effort' to locate and apprehend a defendant and bring the defendant to trial."  *Id.* (citing *United States v. Bell*, 2021 WL 2659741, at *1 (S.D. Fla. June 28, 2021) (citing *United States v.*

*Bagga*, 782 F.2d 1541, 1543 (11th Cir. 1986) (quoting *Smith v. Hooey*, 393 U.S. 374, 383, (1969))).

Defendant argues that it was solely the Government's decision to offer Defendant the opportunity

to cooperate, and the Government allowed him to return to New York. *Id*. at 4. Defendant points

out that Defendant was never informed he would be further prosecuted, and he never changed his

address or attempted to hide from law enforcement. *Id*. at 5. Additionally, Defendant disputes

Magistrate Judge Snow's characterization of Agent Palat's efforts to ensure his prompt arrest as

diligent. To the contrary, Defendant argues that these efforts amount to the bare minimum. *Id*.

Defendant points out that there is no evidence that there was any attempt to arrest Defendant after

July 2019. *Id*.

Defendant disputes Magistrate Judge Snow's conclusion that this case is more analogous

to *Clark* than *Ingram*. Defendant points out that *Clark* did not turn solely on whether there was a

bad faith cause of the delay, rather, "the Clark court stated that the toleration of negligence varies

inversely with the length of the delay caused by that negligence." *Id*. at 6 (citing *Clark*, 83 F.3d

at 1353). Defendant contends that because the 35-month delay in this case far exceeds the

17-month delay in *Clark*, this case is readily distinguishable from *Clark*. Defendant contends that

*Ingram* should control this case because in *Ingram*, "the court held a defendant need not show

prejudice when there was a 2-year delay between the filing of the indictment and the trial." *Id*. at

6 (citing *Ingram*, 446 F.3d at 1340). Defendant contends that here, like in *Ingram*, the Defendant

never moved his residence and was convicted of an ordinary street crime and, therefore, the Court

should find that the 35-month delay was heavily weighs against the Government. *Id*. at 7.

Second, Defendant argues that the third *Barker* factor, assertion of right, weighs heavily

against the Government because Defendant promptly asserted his speedy trial rights before this

Court. *Id*. at 8. Defendant points out that in *Ingram*, the Court found that the third *Barker* factor

weighed heavily against the Government when Defendant asserted his right 58 days after he was arraigned.  *Id*. (citing *United States v. Larry Darnell Ingram*, Case No. 02-cr-80189, ECF Nos. 6, 12 (S.D. Fla. 2002)).  Defendant points out that here, 63 days elapsed between his arraignment and his filing of the instant Motion, and 28 days elapsed between his arraignment and the instant Motion.  Thus, Defendant argues that he "promptly asserted his speedy trial rights, and that factor should weigh heavily against the government."  *Id*.

With respect to the second *Barker* factor, the Court finds that Magistrate Judge Snow was correct in her assessment that this case is more analogous to *Clark* than *Ingram*.  Like in *Clark*, this case does not present bad-faith or deliberate conduct on behalf of the Government.  83 F.3d at 1353.  Rather, the Government was merely negligent in its efforts to apprehend Defendant under circumstances where Defendant was likely located at a known address.  *Id*.  The *Clark* court noted that "[i]n cases of government negligence, our concern for substantiating prejudice decreases as the period of delay increases."  *Id*.  (citing *Doggett*, 505 U.S. at 657–58).  The *Clark* court found that the 17-month delay was distinguishable from the 8 ½ year delay in *Doggett*, and the defendant should therefore be required to show prejudice under the fourth prong of *Barker*.  *Id*. at 1354.  Likewise, in this case, the Court finds the 35-month delay is far from the 8 ½ year delay in *Doggett*, and is much closer to the 17-month delay presented in *Clark*.  *Id*.

Additionally, in *Clark*, the Eleventh Circuit attributed the delay to negligence because the Government "erroneously assumed the U.S. Marshal's office had the arrest warrant and planned to serve him."  83 F.3d at 1353.  Similarly, in this case, Agent Palat relied on other law enforcement officials in New York to effectuate Defendant's arrest, who were negligent.  Thus, this case is dissimilar from *Ingram*, where a single agent was responsible for the negligent efforts to apprehend the defendant.  *Ingram*, 446 F.3d at 1339 ("Unlike *Clark*, where police officers failed to arrest the defendant because they believed that the U.S. Marshal's office was planning to execute the arrest

warrant, the record in this case does not support any reasonable explanation for the Government's

neglect in executing the warrant."). Specifically, Magistrate Judge Snow found that:

> The Westchester agents informed Agent Palat that they had attempted to locate the Defendant on one occasion and would be trying again. Agent Palat later contacted the New York Fugitive Task Force and the U.S. Marshal to provide assistance. Also, on January 18, 2019, Agent Palat submitted a Fugitive Declaration Form pertaining to the Defendant (Government Ex. 2, ECF No. 14-4), which resulted in the entry of the Defendant's arrest warrant into NCIC (Government's Ex. 3, ECF No. 14-6). On July 8, 2019, the agent initiated an EPIC lookout for the Defendant. (Government's Ex. 4, ECF No. 14-8.)

R&R at 3. This is significant, because the *Ingram* court distinguished *Clark* based on the fact that

only a single law enforcement agent was responsible for the defendant's arrest—whereas, in *Clark*,

"police officers failed to arrest the defendant because they believed that the U.S. Marshal's office

was planning to execute the arrest warrant." *Id*. (citing *Clark*, 83 F.3d at 1354). For this reason,

the Court agrees with Magistrate Judge Snow that this case is more analogous to *Clark*, and

distinguishable from *Ingram*. Relatedly, the Court agrees with Magistrate Judge Snow that Agent

Palat's diligent efforts are a mitigating factor for the Government, and the ultimate cause of the

delay was other law enforcement officers on whom he relied, who acted negligently. R&R at 7.

This underscores the reasons why Magistrate Judge Snow was correct to find that this case is

analogous to *Clark*, and distinguishable from *Ingram*.

Moreover, Magistrate Judge Snow found that "while the COVID-19 pandemic did not

prevent the arrest of the Defendant, it was another complicating factor which was outside the

Government's control." R&R at 5. Magistrate Judge Snow also noted Agent Palat's testimony

that agents were required to work remotely when possible beginning in March 2020 that, as a

result, "work slowed down, access to facilities decreased and law enforcement agents had to devise

different ways to coordinate with one another." *Id*. Thus, although Magistrate Judge Snow did

not explicitly find that the COVID-19 pandemic was a cause of the delay, she did find that it was

a "complicating factor."   The Court agrees that, at a minimum, COVID-19 was a complicating

factor and this weighs in favor of requiring Defendant to show prejudice because it reduces the

extent to which the Government was responsible for the delay in Defendant's arrest.  *See, e.g.*,

*Clark*, 83 F.3d at 1353 ("In cases of government negligence or bad faith, the reasons for the delay

are critical and must be examined closely.").  Thus, the Court agrees with Magistrate Judge Snow

that the COVID-19 pandemic is a factor that mitigates the role of the Government's negligence in

the delay of Defendant's arrest.  R&R at 7.

As the Eleventh Circuit noted in *Clark*, "here is no hard and fast rule to apply here, and

each case must be decided on its own facts" and district courts are afforded "considerable

deference" on this issue.  83 F.3d at 1352.  In this case, although there can be no doubt that the

Government was negligent in its efforts to arrest Defendant, for the reasons stated above, this

negligence does not rise to the level that would excuse Defendant from the requirement to show

prejudice under the fourth *Barker* factor.

With respect to the third *Barker* factor, the Court finds that Defendant timely asserted his

right to a speedy trial.  As noted in Defendant's Objections, Defendant asserted his right here more

quickly after his arraignment than in *Ingram*, where the Eleventh Circuit found that the defendant's

timely assertion of his right to a speedy trial weighed heavily against the Government.  *Ingram*,

446 F.3d at 1340.   However, for the reasons discussed in the R&R, the Court agrees with

Magistrate Judge Snow that Defendant's timely assertion of his right to speedy trial does not

excuse the requirement to show prejudice under the fourth *Barker* factor.  *See* R&R at  8–9.

For the reasons discussed above, the Court agrees with Magistrate Judge Snow that because

Defendant cannot show prejudice under the fourth *Barker* factor, Defendant's instant Motion must

be denied.

Accordingly, UPON CONSIDERATION of the Motion, the R&R, the pertinent portions of the record, and being otherwise fully advised in the premises, it is hereby ORDERED AND ADJUDGED that:

1. Magistrate Judge Snow's R&R (ECF No. 23) is ADOPTED.

2. Defendant's Objections (ECF No. 24) are OVERRULED.

3. Defendant's Motion to Dismiss Indictment Due to Post-Indictment Delay in Violation of Defendant's Sixth Amendment Right to a Speedy Trial (ECF No. 12) is DENIED.

DONE AND ORDERED in Chambers at Miami, Florida this _4th_ day of November, 2021.

K. MICHAEL MOORE
UNITED STATES DISTRICT JUDGE

c: All counsel of record